FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JAN 1 3 2006

GREGORY C. LANGHAM

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-01377-RPM-OES

THE CASCADE FUND, LLLP, a Colorado limited liability company, by and through
WHITE PEAKS GROUP, LLC, a Colorado limited liability Company, its General Partner,

    Plaintiffs,

v.

JON E. HANKINS,

    Defendant.

## [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter having come before the Court on the Motion for Entry of Default Judgment against Defendant Jon E. Hankins ("Hankins") on January 12, 2006, the Court having reviewed that Motion, and being fully advised in the premises, hereby enters its Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1.    The Cascade Fund, LLLP ("Cascade"), is a Colorado limited liability limited partnership with a principal place of business of 32065 Castle Court, Suite 100, Evergreen, Colorado 80439. Plaintiff White Peaks Group, LLC ("White Peaks") is a Colorado limited liability company with a principal place of business of 32065 Castle Court, Suite 100, Evergreen, Colorado 80439. White Peaks is the general partner of Cascade. First Amended Complaint (the "FAC") ¶ 2.

00261081 / 1

2. Defendant Hankins is an adult who resides in Knoxville, Tennessee. Hankins is the sole managing member of Tenet. Hankins is not registered as an investment adviser representative or in any other capacity under the Tennessee Securities Act of 1980 or the securities law of any other state. During the relevant time period, Hankins made investment decisions with respect to Tenet Asset Management, LLC ("Tenet") and the Tenet Capital Partners Convertible Opportunities Fund, L.P. (the "Tenet Fund"). FAC ¶ 5.

3. Cascade originated this action on June 21, 2005 by filing its Verified Complaint and Jury Demand in state district court in Jefferson County, Colorado against Hankins, as well as Tenet and the Tenet Fund (the "Tenet Defendants"). The Defendants removed the case to federal district court pursuant to 28 U.S.C. §§ 1441 and 1446. On August 22, 2005, Cascade filed a notice of dismissal of the Tenet Defendants, leaving only Hankins as a defendant in this action.

4. On July 29, 2005, Cascade filed its First Amended Complaint and Jury Demand (the "FAC") in this Court.

5. On August 26, 2005, Hankins filed his Motion to Dismiss or in the Alternative to Transfer. In that Motion, Hankins argued that this Court lacked personal jurisdiction. In the alternative, Hankins argued that the Court should transfer this case to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404. This Court denied the Motion on October 20, 2005, holding that Cascade established a factual basis for specific jurisdiction over Hankins and that there was insufficient basis for a transfer to the Southern District of New York.

6. On November 14, 2005, Hankins' counsel filed his Motion to Withdraw as

00261081 / 1

Counsel.

7. Pursuant to this Court's November 14, 2005 Order, Hankins' Answer was due on November 21, 2005.

8. On November 21, 2005 Hankins filed his Third Motion for Enlargement of Time to Answer or Otherwise Respond to the FAC. The Court ordered that the Motion for Enlargement of Time and the Motion to Withdraw would be considered at the December 20, 2005 Scheduling Conference.

9. Defendant Hankins failed to file an Answer or other responsive pleading in this matter and on December 20, 2005, this Court granted Hankins' counsel's motion to withdraw as counsel and entered default against Hankins. See December 20, 2005 Order Granting Motion to Withdraw and December 20, 2005 Order Declaring Jon E. Hankins in Default.

10. This action arises out Hankins' fraudulent inducement to Cascade, in Evergreen, Colorado, to enter into an investment management agreement with Tenet, and, in Hankins' capacity as an investment adviser and fiduciary to Plaintiffs, his fraudulent and otherwise wrongful handling and misappropriation of the funds Cascade entrusted to him. See FAC ¶¶ 11-36.

11. Cascade is a hedge fund. Cascade maintains a brokerage account at Banc of America Securities LLC ("BOA"). In or about mid-January, 2005, Cascade learned of Tenet's investment advisory and management services from Mondiale Partners ("Mondiale"), a New York-based financial services firm. Between mid-January 2005 and late April 2005, Cascade engaged in a series of conference calls with Hankins and Tenet regarding their investment

00261081 / 1

advisory and management services. FAC ¶¶ 11-12.

12. On or about March 31, 2005, Hankins made a presentation to Cascade and provided marketing materials through Mondiale. At that teleconference, Hankins advised Cascade that he used a fully hedged trading strategy that limited an investor's exposure to market risks. The marketing materials Hankins provided indicated that the Tenet Fund had 32.5% returns in 2004. FAC ¶ 13.

13. The Tenet Fund's February 1, 2005 Confidential Private Placement Memorandum ("PPM") states that the Tenet Fund seeks "consistent above average returns primarily through a combination of long-term and short-term investments to achieve capital appreciation, while also attempting to preserve capital and mitigate risk through diversification of investments and hedging activities." The PPM states further that most of the Tenet Fund's assets would be invested in convertible bonds and equities with arbitrage investment strategies involving the simultaneous purchase of a convertible bond and the short selling of the underlying equity. FAC ¶ 14.

14. Between mid-January 2005 and the end of April 2005, Hankins solicited Cascade to invest money for Hankins and Tenet to manage consistent with Hankins' management of the Tenet Fund. FAC ¶ 15.

15. On April 29, 2005, Cascade entered into an Investment Management Agreement ("Agreement") with Tenet under the terms of which, Tenet, as an investment manager, was retained by Cascade "to render investment management services and to manage Client's [Cascade's] securities investment account." The Agreement called for Cascade to pay Tenet

0.25% of the net asset value of the Cascade account at the beginning of each calendar quarter in exchange for receiving Tenet's services. Hankins and Tenet were to trade in the Cascade account in the same manner as they traded the account of the Tenet Fund. Tenet was provided full discretionary authority to cause trades to be placed in the Cascade account in a manner consistent with those placed in the Tenet Fund, subject to the investment objectives and restrictions set forth in Exhibit A to the Agreement. The Agreement expressly excluded Tenet from having the authority to take or have possession of any assets in the account established to hold Cascade's funds at BOA or to direct delivery of any Securities or payment of any funds held at BOA except to Cascade. The Agreement further restricted Tenet from investing more than fifteen percent of Cascade's account in securities of a single issuer, measured at the time of each investment in such issuer. FAC ¶16.

16. According to the PPM, "[i]n carrying out the Partnership's [Tenet Fund's] investment objective the General Partner [Tenet] intends to employ traditional convertible arbitrage investment strategies. Traditional convertible arbitrage investment strategies involve the simultaneous purchase of a convertible bond and the short selling of the underlying asset." FAC ¶ 16(f).

17. On or about May 3, 2005, Cascade funded its BOA account with $750,000. On May 6, 2005, Hankins began providing investment advisory services to Cascade and trading in Cascade's account. On May 13, 2005, Cascade transferred an additional $300,000 to its BOA account for Hankins to manage, for a total investment of $1,050,000. FAC ¶ 18.

18. Two weeks later, on or about May 17, 2005, Cascade reviewed its BOA account

00261081 / 1

online and discovered that the account held very large naked short positions in stock of Google, Inc. ("Google") and other companies. The account statement indicated that approximately 6,000 shares of Google stock had been sold short, and none of this position was hedged. The Google stock which had been sold short represented a value of over 100% of the entire Cascade account. FAC ¶ 19.

19. To hold such naked short positions in the Cascade account without accompanying offsetting hedging positions was entirely contrary to and an extreme departure from the investment strategy as provided in the Agreement and the PPM, and as described to Cascade by Hankins only weeks before. FAC ¶ 21.

20. On or about May 17, 2005, James T. Hecker ("Hecker") and Charles Bernard ("Bernard"), on behalf of Cascade, contacted Hankins by telephone and asked why the Cascade account held such large and unhedged naked short positions in Google and other stocks. Hankins stated that it was simply a "misallocation" between the Cascade account and the Tenet Fund account. Hankins stated that instead of being short 6,000 shares of Google stock, Cascade was actually short only 500 shares. Hankins further stated that there was a Google call option that should have been allocated to Cascade's account to hedge Cascade's 500 share short position in Google. Hankins represented that the Cascade account had gained between 1% and 2% since Tenet began managing Cascade's account, taking into account the proper allocations between Cascade and the Tenet Fund. Hankins further assured Hecker and Bernard that he would get the matter "straightened out" immediately. Hankins knew or was reckless in not knowing that these statements were false. FAC ¶ 22.

00261081 / 1

21.  Hecker and Bernard contacted Hankins by telephone virtually every business day thereafter through June 2, 2005 to determine if the allocation of Google stock had been resolved. Hankins continued to make the same representations, *i.e.*, the trades had been "misallocated" between the Tenet Fund and the Cascade fund, and that he was working with BOA to correct the situation. FAC ¶ 23.

22.  On or about May 26, 2005, Hecker accessed Cascade's online BOA account and learned that Cascade's account had lost approximately 17% of its initial value. Bernard then requested that Hankins provide Cascade with documents reflecting Cascade's true holdings and value. FAC ¶ 24.

23.  On May 26, 2005, Hankins sent to Cascade a statement prepared by Tenet (the "Tenet Statement") in which Hankins and Tenet represented to Cascade that the value of the Cascade account at BOA was $1,063,621.30. This figure was much larger than and contrary to the value BOA was showing for Cascade's account. FAC ¶ 25.

24.  After reviewing the Tenet Statement, on May 31, 2005, Cascade demanded that Hankins bring the BOA account up to the value shown in the Tenet statement, *i.e.* $1,063,621.30, liquidate Cascade's holdings and cease any further trading on Cascade's behalf. In the ensuing days Cascade reiterated this demand over five times, orally and through email. Cascade instructed Hankins to liquidate the balance of the assets in the Cascade account and instructed BOA to revoke Tenet's authorization to trade in the account. FAC ¶¶ 26-27.

25.  Tenet and Hankins took possession of assets in Cascade's account and directed delivery of those assets to the Tenet Fund. FAC ¶ 29.

26. On June 9, 2005, Hankins sent a letter to Olympia Capital Associates ("Olympia"), the administrator for the Tenet Fund, in which Hankins instructed Olympia to transfer $319,102.80 from the Tenet Fund to the Cascade account at BOA. This amount represented the difference between what the BOA account held and what Hankins and Tenet said the actual value of the Cascade account held, the difference being accounted for by the purported misallocation. When Cascade contacted Olympia to inquire when the wire transfer to Cascade would take place, Cascade was informed that Olympia would not make the transfer unless and until Olympia received confirmation from Tenet Fund counsel that Hankins had the authority to order such transfer. FAC ¶¶ 30-32.

27. Hankins failed and refused to transfer the promised $319,102.80 to the Cascade account at BOA. FAC ¶ 33.

28. Hankins recklessly, knowingly, willingly, and with the intent to defraud placed, caused to be placed, and retained, funds rightfully belonging to the Cascade in the account of the Tenet Fund, an account Hankins and Tenet controlled and operated for their own benefit, and repeatedly failed and refused to return such funds to Cascade, notwithstanding Hankins' numerous fraudulent, lulling and delaying assertions he was working to correct the "problem". FAC ¶ 36.

## CONCLUSIONS OF LAW

1. This Court has personal jurisdiction and subject matter jurisdiction over Defendant Hankins pursuant to the following:

    a. This Court has subject matter jurisdiction under the diversity doctrine

pursuant to 28 U.S.C. § 1332(a)(1). The amount in controversy, exclusive of interest and costs, is in excess of $75,000. White Peaks and Cascade are citizens of Colorado. Defendant Hankins is a resident and citizen of Tennessee. The Defendants removed this case from Colorado state court pursuant to 28 U.S.C. §§ 1441 and 1446.

  b. This Court has personal jurisdiction over Hankins pursuant to Sections 21(e) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(e) and 78aa.

  c. This Court has personal jurisdiction over Hankins pursuant Colo. Rev. Stat. §11-51-102(8) because, in entering into an investment advisory agreement with Cascade and in providing investment advice and management to Cascade at a time when Cascade was both a resident of and present in the State of Colorado, Hankins transacted investment advisory business in the State of Colorado, and by operation of law, is subject to Colorado law.

  d. This Court has personal jurisdiction over Hankins pursuant to §§13-1-124(1)(a) and (b), C.R.S., in that Defendants transacted business and committed tortious acts within the State of Colorado.

2. Venue is proper in this Court because Cascade was present in Colorado at the time Hankins defrauded Cascade into entering into the investment management agreement with Tenet, and at the time Hankins defrauded and otherwise wrongfully deprived Plaintiffs of their assets.

3. Hankins is in default pursuant to this Court's December 20, 2005 Order. Because Hankins is in default, the factual allegations of the FAC will be taken as true without the

00261081 / 1

necessity of proof. Hankins is deemed to admit every well-pled allegation in the FAC. See, e.g., Lyons Federal Savings Assoc. v. Mortgage Finance, Inc., WL 639024 (D. Colo. 1991); Danning v. Levine, 572 F.2d 1386, 1389 (9th Cir. 1978).

4. With regard to Cascade's claim of Colorado investment advisory fraud pursuant to C.R.S. §§ 11-51-604(3) and 11-51-501(5) against Hankins, I find as follows: Hankins recklessly, knowingly and with intent to defraud violated § 11-51-501(5) in that he received compensation from Cascade in exchange for investment advice; he employed devices, schemes, and artifices to defraud Cascade; and he engaged in transactions, acts, practices and courses of business that both operate as a fraud upon Cascade and are fraudulent, deceptive and manipulative with regard to Cascade. By operation of C.R.S. § 11-51-604(3), by reason of Hankins' reckless, knowing, and intentionally fraudulent conduct, Hankins is liable to Cascade for such legal and equitable relief as this Court deems appropriate, including recission, actual damages, interest at the statutory rate, costs, and reasonable attorney fees.

5. With regard to Cascade's claim of violation of Colorado Consumer Protection Act, C.R.S. 6-1-101, et seq., I find as follows: Hankins is a "person" as that term is defined in C.R.S. § 6-1-102. Hankins engaged in deceptive trade practices as that term is defined in C.R.S. § 6-1-105(1)(a) in the course of providing investment advisory services to Cascade as described herein and in the FAC. Hankins' conduct was undertaken in bad faith, entitling Plaintiffs to treble damages pursuant to C.R.S. § 6-1-113(2)(a)(III).

6. With regard to Cascade's claim of breach of fiduciary duty, I find as follows: The relationship of Hankins with Cascade was such that the Hankins was in control of the

investments made by Cascade. As such, Hankins owed Cascade a fiduciary duty of utmost loyalty and good faith. Hankins breached his duty to Cascade by the conduct described in the FAC and thereby caused Cascade damages.

7. With regard to Cascade's claim of fraudulent misrepresentation, I find as follows: Hankins agreed to provide investment advisory services to Cascade. In connection with providing such investment advisory services, Hankins intentionally made material misrepresentations, and omitted material facts necessary to make the statements made not misleading, as set forth in the FAC and herein. Cascade reasonably relied on said misrepresentations and misleading statements, Hankins intended that Cascade rely on the representations and misleading statements, and Cascade was damaged by Hankins' fraudulent conduct.

8. With regard to Cascade's claim of negligent misrepresentation, I find as follows: Hankins agreed to provide investment advisory services to Cascade. In connection with providing such investment advisory services, Hankins negligently made material misrepresentations, and omitted material facts necessary to make the statements made not misleading, as set forth in the FAC and herein. Cascade reasonably relied on the misrepresentations and misleading statements, Hankins intended that Cascade rely on the representations and misleading statements, and Cascade was damaged by Hankins' negligent conduct.

9. With regard to Cascade's claim of unjust enrichment, I find as follows: Cascade conferred a benefit on Hankins and that benefit was accepted and appreciated by Hankins. It

00261081 / 1

would be inequitable for Hankins to retain those benefits without compensation to Cascade.

10. With regard to Cascade's claim of Tennessee investment advisory fraud pursuant to T.C.A. §§ 48-2-122(c) and 48-2-121(B), I find as follows: In engaging in the conduct described, Hankins willfully violated § 48-2-121(b), T.C.A., in that he received consideration from Cascade for providing investment advice and management; employed devices, schemes and artifices to defraud Cascade; and engaged in acts, practices and courses of business that operate as a fraud and deceit upon Cascade. By operation of § 48-2-122(c), T.C.A., by reason of Hankins' willful violations of § 48-2-121(b), T.C.A., Hankins is liable to Cascade for the damages sustained.

11. With regard to Cascade's claim of Violations of Section 10-b of the federal Securities Exchange Act, I find as follows: Hankins, in connection with the purchase and sale of securities, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, or of the mails, employed devices, schemes and artifices to defraud; made untrue statements of material fact, and omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices, and courses of business which operate as a fraud and deceit upon Plaintiffs. Hankins knew, or was reckless in not knowing, that the representations and omissions set forth in the FAC were false and misleading. Thus, Hankins violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.

## CONCLUSION

On the basis of the foregoing facts and legal principles, judgment shall enter in favor of Cascade and against Defendant Hankins as set forth in Cascade's First Amended Complaint. Judgment shall be entered in the total amount of $1,047,124.33, more specifically broken down as follows:

| | |
|---|---:|
| Principal Amount of loss ($319,102.80) Including treble damages pursuant to C.R.S. § 6-1-113(2)(a)(III): | $957,308.40 |
| Pre-judgment interest from June 1, 2005 to January 15, 2006 at 8% per year: | $47,788.81 |
| Attorneys' Fees, Costs, and Expenses incurred to Date (pursuant to C.R.S. § 11-51-604(3)): | $42,027.12 |
| **TOTAL:** | **$1,047,124.33** |

DATED this 13 day of January 2006.

BY THE COURT:

_____
District Court Judge Richard Matsch

00261081 / 1